

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed April 3, 2017**

_Barbara J. Horner_
_____

**United States Bankruptcy Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CHRIS J. FRITZ, | § | BANKR. CASE NO. 15-34795-BJH |
| | § | (CHAPTER 7) |
| DEBTOR. | § | |
| | § | |
| | § | |
| FRED HILL and CFH ROOFING, INC., | § | ADV. PROC. NO. 16-3030 |
| | § | |
| PLAINTIFFS, | § | |
| | § | |
| v. | § | |
| | § | |
| CHRIS J. FRITZ, | § | |
| | § | |
| DEFENDANT. | § | |

## **MEMORANDUM OPINION**

The Court tried this adversary proceeding (the "**Adversary Proceeding**") on February 10, 2017 (the "**Trial**"). At the conclusion of the Trial, the Court stated its preliminary ruling on the record that the Plaintiffs had failed to prove (i) the required elements of their § 523(a)(2)(A) claim (including damages), and (ii) any damages associated with their §§ 523(a)(4) and (a)(6) claims. Tr. Trans. [AP No. 55] 21:16-17; 23:2-3.[1] With respect to the damages issue, the Court noted that the Plaintiffs had offered into evidence at the Trial, and primarily relied upon, the Final Judgment issued by the 44th Judicial District Court of Dallas County, Texas (the **"State Court"**).[2] Plaintiffs' Exhibit EE (the **"Final Judgment"**).[3] Although the Final Judgment jointly awards the Plaintiffs $100,043.96 in damages and post-judgment interest at five percent (5%), it does not specify which of the claims pled in the underlying state court petition support the award or allocate the damages between the Plaintiffs. *Id.* at 2; Tr. Trans. 21:21-23. This failure to allocate damages among the pled claims is significant here because some of the claims pled in the state court petition may give rise to a nondischargeable judgment under § 523 of the Bankruptcy Code, while others may not.

Because the state court did not identify which claim(s) support the Plaintiffs' recovery of damages in the Final Judgment, and the Plaintiffs chose not to put on any damages evidence here, the Court asked the parties to brief the legal issue of whether this Court is permitted to allocate the damages awarded in the Final Judgment among the various claims that were actually litigated in state court when the state court failed to do so. The last of those briefs was filed on February 24, 2017, following which the Court took the matter under advisement.

---

[1] References to "AP No." refer to docket entries in this Adversary Proceeding (16-3030), while references to "BC No." refer to docket entries in the underlying bankruptcy case (15-34795).

[2] Cause No. DC-12-06440.

[3] The Final Judgment is also Exhibit 2 to the Complaint [AP No. 1].

This Memorandum Opinion contains the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure (the "**Bankruptcy Rules**") 7052.[4]

## I. JURISDICTION, VENUE, AND STATUTORY AND CONSTITUTIONAL AUTHORITY

The United States District Court for the Northern District of Texas has subject matter jurisdiction over the Adversary Proceeding under 28 U.S.C. § 1334.  Although bankruptcy courts do not have independent subject matter jurisdiction over bankruptcy cases and proceedings, 28 U.S.C. § 151 grants bankruptcy courts the power to exercise certain "authority conferred" upon the district courts by title 28.  Under 28 U.S.C. § 157, the district courts may refer bankruptcy cases and proceedings to the bankruptcy courts for entry of either a final judgment (core proceedings) or proposed findings and conclusions (noncore, related-to proceedings).  So, as relevant here, this Court exercises authority over the Chapter 7 bankruptcy case of Chris J. Fritz ("**Fritz**") and the Adversary Proceeding pursuant to the Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc adopted in this district on August 3, 1984.  Venue is proper with this Court under 28 U.S.C. § 1409.

Creditors Fred Hill ("**Hill**") and CFH Roofing, Inc. (the "**Company**" and, together, the "**Plaintiffs**") request that this Court conclude that the Final Judgment is nondischargeable in accordance with 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and/or (a)(6).  A complaint seeking a determination of whether a debt is nondischargeable is a core proceeding under 28 U.S.C. § 157(b)(2)(I) and (O).  Accordingly, this Court has statutory authority to hear and finally determine the claims asserted in the Adversary Proceeding.  Moreover, this Court has constitutional authority to enter a final judgment in the Adversary Proceeding, which arises solely

---

[4]  To the extent any finding of fact is more properly considered a conclusion of law, or a conclusion of law more properly considered a finding of fact, it should be so considered.

under 11 U.S.C. § 523 and raises no ancillary issues that may implicate the holding in *Stern v. Marshall*, 564 U.S. 462 (2011).

## II. FACTUAL AND PROCEDURAL HISTORY

On January 6, 2011, Hill and Fritz incorporated the Company in Texas. Complaint Against Debtor Chris J. Fritz Pursuant to 11 U.S.C. § 523(a) to Determine Dischargeability of Certain Debts [AP No. 1] (the **"Complaint"**) ¶ 5.[5] Hill and Fritz were the initial directors and officers, each held a fifty percent (50%) ownership interest in the Company, and were responsible for identifying and soliciting job opportunities, preparing bids, and supervising the Company's work. *Id.* ¶¶ 5, 9. The Company's sales agent identified a business opportunity with Structural and Steel Products Manufacturing (**"Structural Steel"**) in Fort Worth, Texas. *Id.* ¶ 6. Hill, Fritz, and the sales agent made a presentation to Structural Steel in the late summer or early fall of 2011, and Structural Steel agreed to employ the Company. *Id.*

Without Hill's or the Company's knowledge, and while Fritz was still a director, officer, and 50% owner of the Company, Fritz formed Garrin Roofing, LLC ("**Garrin**") on September 30, 2011. *Id.* ¶¶ 7, 9. Fritz told the principals of Structural Steel that (i) Hill was leaving the Company, and (ii) Fritz was taking over. *Id.* ¶ 7. Utilizing the Company's property and crews, Fritz, through Garrin, began performing services for Structural Steel, without informing Hill and the Company. *Id.* Hill eventually became aware of Fritz's actions and objected. *Id.* In return for Hill refraining from interfering with the Structural Steel job, Fritz represented to Hill that he would (i) account for and split the profits from the Structural Steel job with Hill and the Company, an amount in

---

[5] As explained below, due to Fritz's failure to answer the Complaint, the factual allegations contained in the Complaint have been deemed admitted, allowing the Court to rely upon them here. *See infra* at pp. 9-10.

excess of $100,000.00, and (ii) enter into an agreement with Hill to dissolve the Company. *Id.* ¶¶ 7, 9. Hill relied upon these representations. *Id.* ¶ 7. Although Fritz and Garrin continued to use the Company's property, Fritz refused to finalize these agreements and retained all the profits received from the Structural Steel job for Garrin and himself. *Id.*

Fritz also took actions to rebrand the Company's website and divert the Company's business opportunities to Garrin. *Id.* ¶ 8. Although the Company's website retained the same layout, project gallery, and list of products offered, Fritz changed the website's name to "Garrin Commercial Roofing." *Id.*

On June 8, 2012, the Plaintiffs filed their original petition in the 44th Judicial District Court in Dallas County, Texas (the "**State Court**") against Fritz and Garrin. On March 28, 2014, the Plaintiffs filed an amended petition in the State Court , alleging multiple causes of action against Fritz and Garrin including (i) breach of fiduciary duty, (ii) constructive trust, (iii) accounting, (iv) tortious interference with prospective business, (v) usurpation of corporate opportunity, and (vi) breach of contract and/or promissory estoppel. Complaint ¶ 9; Plaintiffs' First Amended Original Petition [Plaintiffs' Exhibit Z] (the **"State Court Petition"**)[6] at 5-7. On November 1, 2015, following trial, the State Court entered the Final Judgment, which (i) awarded the Plaintiffs damages of $100,043.96, plus post-judgment interest, (ii) awarded Fritz damages of $3,528.16, plus post-judgment interest, and (iii) ordered each party to bear one-half of the total accounting cost, $12,062.50.[7] Final Judgment [Plaintiffs' Exhibit EE] at 2-3. However, the State Court issued the Final Judgment without, among other things: (i) identifying the claim(s) the Plaintiffs prevailed

---

[6] The State Court Petition is also Exhibit 1 to the Complaint [AP No. 1].

[7] The Final Judgment also ordered each party to bear their own attorneys' fees and court costs. Plaintiffs' Exhibit EE at 2.

on, (ii) allocating the damage award among the Plaintiffs' pled claims, or (iii) allocating the damages between Hill and the Company. *Id*. The relevant portion of the Final Judgment is set forth below:

> IT IS ORDERED, ADJUDGED AND DECREED that the Plaintiffs/Counter-Defendants CFH Roofing, Inc. and Fred Hill, shall have and recover of and from Defendants Chris Fritz and Garrin Roofing, LLC, the following:
>
> 1. damages in the amount of One Hundred Thousand, Forty Three Dollars and 96/100 Dollars ($100,043.96);
>
> 2. Post-judgment interest at the statutory rate of five percent (5%) per annum from the date of judgment until paid or satisfied.

*Id*. at 2.

On November 30, 2015 (the "**Petition Date**"), Fritz filed a voluntary petition, [BC No. 1] (the "**Petition**"), for relief under Chapter 7 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, initiating the above-referenced bankruptcy case (the "**Bankruptcy Case**").

On March 4, 2016, the Plaintiffs filed the Complaint objecting to the dischargeability of the Final Judgment in the Bankruptcy Case. Complaint ¶ 4. After filing the Complaint, the Plaintiffs attempted to serve a summons on Fritz.[8] The Clerk of Court issued the first summons on March 7, 2016, which now indicates that Fritz received the Complaint "in hand" on June 1, 2016. Summons Service Executed [AP No. 8] (the **"First Summons"**). The First Summons was delivered to Fritz "personally," as permitted by Federal Rule of Civil Procedure 4(e)(2)(A) made applicable here by Bankruptcy Rule 7004. FED. R. CIV. P. 4(e)(2)(A). However, Bankruptcy Rule

---

[8] Fritz was not represented by counsel prior to or at trial. Following trial, the law firm of Curtis Castillo, P.C. filed a post-trial brief on Fritz's behalf. Defendant Chris J. Fritz's Post-Trial Brief in Opposition to Plaintiffs' Complaint for Nondischargeability of Debt [AP No. 56] (the **"Defendant's Post-Trial Brief"**).

7004(e) requires the "delivery of the summons and complaint within 7 days after the summons is issued." FED. R. BANKR. P. 7004(e).  Thus, the First Summons expired on March 14, 2016, and was no longer valid when it was served on June 1, 2016, almost three months after it was issued.

On August 8, 2016, the Clerk issued a second summons at the Plaintiffs' request.  Reissued Summons in an Adversary Proceeding [AP No. 15] (the **"Second Summons"**).  The same day, Fritz filed a motion to dismiss the Adversary Proceeding on the "grounds that the summons wasn't properly filed in a timely manner and was never received until 6/1/2016."  Motion for Dismissal [AP No. 17] (the "**First Motion to Dismiss**") at 1.  Plaintiffs responded to the First Motion to Dismiss, stating that (i) Fritz had "entered an appearance as a result of his filing the Motion to Dismiss," (ii) he "was served with proper summons," and (iii) "he should file an answer." Response to Defendant Chris J. Fritz's Motion for Dismissal [AP No. 24] at 1.  On September 19, 2016, the Court held a hearing on the First Motion to Dismiss and the Plaintiffs' motion to compel Fritz to answer the Complaint.  Motion to Compel Defendant/Debtor Chris J. Fritz to File and Answer [AP No. 16] (the **"Motion to Compel Answer"**).  The Court denied the First Motion to Dismiss without prejudice because Fritz did not appear to prosecute his motion and it appeared to the Court that the First Motion to Dismiss was now moot given service of the Second Summons on Fritz.  Hr'g Tr. 9/19/2016 9:07:51 a.m.[9]  The Court also denied[10] the Plaintiffs' Motion to Compel Answer.  *Id*.

---

[9]  The Court held a hearing on September 19, 2016.  Neither party ordered a transcript, so the Court cites to its audio recording.

[10]  At the hearing, the Plaintiffs' counsel was unable to cite the Court to a rule or case law suggesting that the Court could "order" Fritz to answer the Complaint.  Instead, the normal procedure would be for the Plaintiffs to seek the Clerk's entry of default if Fritz failed to answer the Complaint, followed by the filing of a motion for entry of default judgment in accordance with Fed. R. Civ. P. 55, made applicable to the Adversary Proceeding by Bankruptcy Rule 7055.  Although not directly relevant, the Plaintiffs tried to obtain a default judgment, but their attempts were procedurally defective, resulting in the Adversary Proceeding proceeding to trial.

The Court entered an order denying the First Motion to Dismiss on September 21, 2016. Order Denying Motion [AP No. 25] (the **"Denial of First Motion to Dismiss"**) at 1. According to Bankruptcy Rule 7012,[11] Fritz's answer to the Complaint or other responsive pleading was due on or before October 5, 2016. FED. R. BANKR. P. 7012(a).

Instead of answering the Complaint, Fritz filed a second motion to dismiss the Adversary Proceeding on September 30, 2016. 2nd Motion for Dismissal [AP No. 27] (the **"Second Motion to Dismiss"**). The Second Motion to Dismiss was virtually identical to the First Motion to Dismiss.[12] At a hearing held November 1, 2016, the Court addressed (i) the Second Motion to Dismiss, (ii) the need for a new trial docket call setting and revised scheduling order, and (iii) Fritz's need to answer the Complaint. Taking these in order, because the Clerk's office had reissued the summons on August 8, 2016, Second Summons at 1, and the Second Motion to Dismiss only referenced the untimely service of the First Summons, the Court concluded the Second Motion to Dismiss must be denied given the issuance and service of the Second Summons on Fritz. Hr'g Tr. 11/1/2016 2:23:15 p.m.[13] Then, after discussing timing and required discovery with the parties, the Court reset trial docket call of the Adversary Proceeding for February 7, 2017. The Plaintiffs subsequently filed, and this Court signed, an updated scheduling order. Scheduling Order [AP No. 40] (the **"Updated Scheduling Order"**) at 1. Finally, the Court told Fritz, who

---

[11] Bankruptcy Rule 7012(a) states, in relevant part, that:

> The service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court: (1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served **within 14 days** after notice of the court's action; (2) if the court grants a motion for a more definite statement, the responsive pleading shall be served **within 14 days** after the service of a more definite statement.

FED. R. BANKR. P. 7012(a) (emphasis added).

[12] The content of both motions was identical, however the titles were different. The First Motion to Dismiss was titled "Motion for Dismissal." AP No. 17. The Second Motion to Dismiss was titled "Plaintiff's 2nd Motion for Dismissal." AP No. 27. Although the second document was titled as the "Plaintiff's" motion, that was obviously in error.

[13] The Court held a hearing on November 1, 2016. Neither party ordered a transcript, so the Court cites to its audio recording.

appeared at that hearing without counsel and had filed the First Motion to Dismiss and the Second Motion to Dismiss pro se, that it was in his interest to answer the Complaint, to which he responded that he intended to do so.  Hr'g Tr. 11/1/16 2:26:27 p.m.  The Court's Order denying the Second Motion to Dismiss was entered on December 14, 2016.  Order Denying Motion [AP No. 44] at 1.

Per Bankruptcy Rule 7012, Fritz's answer was due on or before December 28, 2016.  FED. R. BANKR. P. 7012(a).  Fritz, however, failed to file an answer.

In accordance with the Updated Scheduling Order, the Plaintiffs filed their exhibit list on January 24, 2017.  CHF Roofing, Inc. and Fred Hill's Exhibit List for Adversary Proceeding Trial Setting [AP No. 47].  The Plaintiffs did not file a witness list with the Court.  *Id*.  Fritz did not file a witness or exhibit list with the Court.  The Updated Scheduling Order also required the parties to file a Joint Pretrial Order seven days prior to trial docket call.  Updated Scheduling Order at 2. On January 31, 2017, a Joint Pretrial Order was filed, but was only signed by the Plaintiffs.  Joint Pretrial Order [AP No. 48].  Following trial docket call on February 7, 2017, and at the direction of the Court, the parties submitted an amended Joint Pretrial Order, which the Court signed. Amended Joint Pretrial Order [AP No. 51] (the **"Amended Joint Pretrial Order"**).  Although both parties signed the Amended Joint Pretrial Order, Fritz did not list any contested issues of facts or law in it.  *Id*. at 3-4.

At the outset of Trial on February 10, 2017, the Plaintiffs asked the Court to deem the factual allegations in the Complaint admitted under Federal Rule of Civil Procedure 8 given Fritz's failure to answer the Complaint.  Under Federal Rule 8, made applicable here by Bankruptcy Rule 7008, "[a]n allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied."  FED. R. CIV. P. 8(b)(6).  Thus,

at the Plaintiffs' request, the Court concluded that it must "accept all of the factual allegations in the Complaint as deemed admitted by Fritz's failure to answer the Complaint and object to those allegations." Tr. Trans. 8:21-24.  In addition, because the Amended Joint Pretrial Order did not identify any contested issues of fact, the Court concluded that there were no factual disputes between the parties.  Tr. Trans. 9:15-16; 19-20.; *see Macro Niche Software, Inc. v. 4 Imaging Solutions, LLC*, No. H-12-2293, 2014 WL 11510263, at *1 (S.D. Tex. May 12, 2014) (allegations deemed admitted due to opposing party's failure to answer, leaving only the amount of damages at issue);  *Hendricks v. Pickaway Correctional Institution*, No. 2:08-CV-580, 2016 WL 4449642, at *4 (S.D. Ohio Aug. 24, 2016), *appeal dismissed sua sponte*, No. 16-4016 (6th Cir. Jan. 12, 2017) (Court acknowledged Federal Rules of Civil Procedure 8(b)(6) and 12(a)(4)(A) provide no discretion, and granted Plaintiff's Motion in Limine).

Deeming the factual allegations in the Complaint admitted left the Plaintiffs with the burden to prove their damages, which they attempted to do through the introduction of the Final Judgment into evidence, as will be discussed in detail below.

## III.    LEGAL ANALYSIS

In the Complaint, the Plaintiffs assert that the Final Judgment is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and (a)(6).  Complaint ¶ 4.  The Plaintiffs bear the burden to prove, by a preponderance of the evidence, each element of their claims.  *See Grogan v. Garner*, 498 U.S. 279, 286–88 (1991).  To attempt to satisfy their burden of proof here, the Plaintiffs offered two exhibits into evidence at the Trial—*i.e.*, certified copies of (i) the State Court Petition [Plaintiffs' Exhibit Z], and (ii) the Final Judgment [Plaintiffs' Exhibit EE], along with the deemed

admissions of fact from the Complaint. The Court admitted both exhibits into evidence[14] and, as discussed above, accepted the factual allegations in the Complaint as true.

Fritz attempted to offer evidence to support his position as well. Plaintiffs objected to the admission of any evidence by Fritz on the grounds of unfair surprise and prejudice, given Fritz's failure to (i) file a witness and exhibit list, (ii) answer the Complaint (which resulted in Fritz's deemed admission of all of the factual allegations in the Complaint), and/or (iii) list any contested issues of fact in the Amended Joint Pretrial Order. The Court sustained the Plaintiffs' objection. Thus, the only evidence before the Court following the close of the evidence at the Trial was the deemed admitted factual allegations in the Complaint, Plaintiffs' Exhibit Z (the State Court Petition), and Plaintiffs' Exhibit EE (the Final Judgment).

Having identified the limited evidentiary record before it, the Court turns to the Plaintiffs' nondischargeability claims, addressing each in turn.

### A. Plaintiffs' § 523(a)(2)(A) Claim.

Section 523(a)(2)(A) provides that "a discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit to the extent obtained by— (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Given that the Plaintiffs' claim is premised upon Fritz's false representations to them, to satisfy their burden the Plaintiffs must prove each of five required elements by a preponderance of the evidence: "(1) that the debtor made a representation; (2) that

---

[14] Tr. Trans. 5:15-16 (Plaintiffs); 5:17-18 (Court); 6:16 (Fritz); 6:17 (Court).

the debtor knew the representation was false; (3) that the representation was made with the intent to deceive the creditor; (4) that the creditor actually and justifiably relied on the representation; and (5) that the creditor sustained a loss as a proximate result of its reliance." *Cardwell v. Gurley (In re Cardwell)*, 487 F. App'x 183, 185 (5th Cir. 2012) (unpublished) (citing § 523(a)(2)(A) factors); *Gen. Elec. Capital Corp., v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005) (citing § 523(a)(2)(A) factors) (*overruled on other grounds by Scarbrough v. Purser (In re Scarbrough)*, 836 F.3d 447 (5th Cir. 2016)).

Here, the evidence establishes that Fritz represented to Hill and the Company that Fritz would (i) share the profits derived from the Structural Steel job with Hill and the Company, and (ii) enter into an agreement with Hill to dissolve the Company. Complaint ¶¶ 7, 9. The evidence also establishes that Hill and the Company actually relied[15] upon these representations and was justified on relying on them, and that Fritz failed to share any profits from the Structural Steel job with Hill and the Company, as represented. *Id.*

Thus, the Plaintiffs have satisfied three of the five elements required to prove their § 523(a)(2)(A) claim—*i.e.*, (i) Fritz made a representation to Hill and the Company that he would dissolve the Company and share the profits earned from the Structural Steel job, (ii) Hill and the Company actually and justifiably relied on Fritz's representations by permitting Fritz to complete the Structural Steel job, expecting him to share the profits with them, and (iii) Hill and the

---

[15] "Under Texas law, '[a] corporation can act and acquire knowledge only through its agents. Knowledge held by corporate officers or directors may be imputed to the corporation itself.'" *Reneker v. Offill*, No. 3:08-cv1394-D, 2012 WL 2158733, at *10 (N.D. Tex. June 14, 2012) (*citing Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Although the Compaint only alleges Hill relied upon Fritz's statements, these statements are imputed to the Company under Texas law. As such, the Company also relied on Fritz's misrepresentations.

Company sustained a loss[16] because Fritz did not share the profits from the Structural Steel job with them.

However, the evidence does not address (ii) Fritz's state of mind; specifically if Fritz (a) knew his representations to Hill and the Company were false when he made them, and (b) made the representations with an intent to deceive Hill and the Company. Without evidence to satisfy the remaining elements of their § 523(a)(2)(A) claim, the Plaintiffs' claim fails.

### B. Plaintiffs' § 523(a)(4) Claim.

"A discharge under section 727 ... does not discharge an individual debtor from any debt … for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). This subsection is intended to address situations where "debts are incurred through abuses of fiduciary positions and through active misconduct whereby a debtor has deprived others of their property by criminal acts." *Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342 (5th Cir. 1998) (footnote omitted). "[T]he concept of fiduciary under § 523(a)(4) is narrowly defined, applying only to technical or express trusts, and not those which the law implies from contract." *LSP Inv. Partnership v. Bennett (In re Bennett)*, 989 F.2d 779, 784 (5th Cir. 1993) (*citing Angelle v. Reed (In re Angelle)*, 610 F.2d 1335 (5th Cir. 1980)). "In addition, the requisite trust relationship must exist prior to the act creating the debt and without reference to that act." *Id*. As such, "a constructive trust is not sufficient to create a fiduciary relationship." *Id*.

---

[16] The amount of the loss is unclear however, given that the amount of profit from the Structural Steel job is not stated in the Final Judgment and the damages awarded in the Final Judgment are not allocated among the pled claims in the State Court Petition.

"The scope of the concept of fiduciary under 11 U.S.C. § 523(a)(4) is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." *Gupta v. Eastern Idaho Tumor Inst., Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004) (*citing In re Bennett*, 989 F.2d at 784). "[S]tate law may create a fiduciary relationship whose breach leads to nondischargeability under § 523(a)(4)." *Shcolnik v. Rapid Settlements Ltd., (In re Shcolnik)*, 670 F.3d 624, 628 (5th Cir. 2012). Under Texas law, "[d]irectors, or those acting as directors, owe a fiduciary duty to the corporation in their directorial actions, and this duty 'includes the dedication of [their] uncorrupted business judgment for the sole benefit of the corporation.'" *Sneed v. Webre*, 465 S.W.3d 169, 178 (Tex. 2015) (*citing Ritchie v. Rupe*, 443 S.W.3d 856, 868 (Tex. 2014)). "Corporate officers [also] owe fiduciary duties to the corporations they serve." *Lifshutz v. Lifshutz*, 199 S.W.3d 9, 18 (Tex. App.—San Antonio 2006, no pet.). "[T]he elements of a claim for breach of fiduciary duty [, under Texas law,] are (1) the existence of a fiduciary duty, (2) breach of the duty, (3) causation, and (4) damages." *First United Pentecostal Church of Beaumont v. Parker*, No. 15-0708, 2017 WL 1032754, at *4 (Tex. Mar. 17, 2017). However, once the Plaintiffs establish a breach of fiduciary duty under Texas law, they still have the burden of proof to "demonstrate the existence of the requisite elements of 11 U.S.C. § 523(a)(4)," *Douglass v. Douglass (In re Douglass)*, No. 13-1406, 2015 WL 6446305, at *27 (Bankr. E.D. Tex. Oct. 23, 2015), such as the existence of the fiduciary duty prior to Fritz's breaches.

Thus, to establish their claim under § 523(a)(4), the Plaintiffs must prove Fritz "engaged in fraud or defalcation while acting in a fiduciary capacity." *In re Shcolnik*, 670 F.3d at 627. "Defalcation is the neglect of a fiduciary duty." *Whitaker v. Moroney Farms Homeowners' Association (In re Whitaker)*, 642 F. App'x. 345, 348 (5th Cir. 2016) (unpublished) (*citing In re Shcolnik*, 670 F.3d at 628).

Turning first to the existence of a fiduciary duty, the Complaint summarily states that "Fritz remained an owner, officer, and director of [the Company], and therefore owed fiduciary duties to both the [C]ompany and to Hill." Complaint ¶9. As discussed above, the Court has deemed the factual allegations in the Plaintiffs' Complaint as true. However, the Plaintiffs' statement that Fritz owes a fiduciary duty to the Company and Hill is a conclusion of law, not a factual allegation. Conclusions of law are the purview of the Court and, as such, the Court does not accept this legal conclusion as true. Accordingly, the Court must independently determine whether Fritz owed a fiduciary duty to Hill and/or the Company.

Taking these in order, for Hill to succeed on his § 523(a)(4) claim, he must first prove that Fritz owed him a fiduciary duty. Although the Complaint generally alleges that Fritz owed a fiduciary duty to Hill, it does not explain the basis for such a duty. Based upon the record before it, the Court can only infer that the alleged fiduciary duty is based upon Hill's and Fritz's positions as co-shareholders of the Company. Complaint ¶¶ 5, 8, 9. Under Texas law, however, "a co-shareholder in a closely held corporation[17] does not as a matter of law owe a fiduciary duty to his co-shareholder." *Hoggett v. Brown*, 971 S.W.2d 472, 488 (Tex. App.—Houston [14th Dist.] 1997, no pet.) (footnote and citation omitted). Because Hill has failed to prove that Fritz owed him a fiduciary duty, Hill's § 523(a)(4) claim for fraud or defalcation while acting in a fiduciary capacity fails.[18]

---

[17] Texas Business Organizations Code states, in relevant part, that:

    (a) In this Section, "closely held corporation" means that a corporation has:

        (1) Fewer than 35 shareholders; and

        (2) No shares listed on a national securities exchange or regularly quoted in an over-the counter market by one or more members of a nation securities association.

TEX. BUS. ORGS. CODE § 21.563(a). Here, the record establishes that the Company had two shareholders, Hill and Fritz, and there is nothing to suggest that the shares were listed on an exchange.

[18] If an appellate court disagrees and concludes that Fritz owed Hill a fiduciary duty under Texas law, Hill's § 523(a)(4) claim also fails for the same reasons the Company's § 523(a)(4) claim fails.

Turning next to the Company, the record shows that Fritz was an officer and director of the Company at all relevant times. Complaint ¶¶ 5, 8, 9. He began his service as a director and officer of the Company at the corporation's inception in January 2011 and remained in those positions through January 2012, including when (i) the Company was employed by Structural Steel, (ii) Fritz formed Garrin, (iii) Fritz and Garrin took the Structural Steel job away from the Company, and (iv) Fritz rebranded the Company's website as Garrin's website. *Id.* ¶¶ 5, 6, 8, 9. As a director and officer, Fritz clearly owed a fiduciary duty to the Company at all material times. *Ritchie v. Rupe*, 443 S.W.3d at 874 n.27 (The Texas Supreme "Court has recognized a fiduciary duty owed by corporate officers and directors to the corporation, which prohibits officer and directors from usurping corporate opportunities for personal gain and requires them to exercise their 'uncorrupted business judgment for the sole benefit of the corporation.'") (*citing Int'l Bankers Life Ins. v. Holloway,* 368 S.W.2d 567, 576–77 (Tex. 1963)).

The evidence establishes that Fritz breached his pre-existing fiduciary duty to the Company on multiple occasions. By forming Garrin and taking the Structural Steel job, Fritz deprived the Company of earnings it would have otherwise enjoyed. Complaint ¶ 7. Moreover: (i) in utilizing the Company's crew and property on the Structural Steel job, Fritz prevented the Company from engaging in alternate roofing jobs; and (ii) in rebranding the Company's website as Garrin's website, Fritz prevented the Company from attracting potential customers. *Id.* ¶¶ 7-8. Thus, the record clearly establishes that Fritz breached the established fiduciary duty he owed to the Company.

Of course, the Company must also prove the extent of its damages from Fritz's breaches of fiduciary duty that it seeks to have excepted from discharge under § 523(a)(4). Once again, the only evidence of damages is the Final Judgment. However, this evidence fails to establish that

any "debts [were] incurred through [Fritz's] abuses of [his] fiduciary position[]." *Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d at 342.  This is so because the damages awarded to Hill and the Company in the Final Judgment were not allocated by the State Court among the pled claims or between Hill and the Company.  Final Judgment [Plaintiffs' Exhibit EE] at 2-3.  *See e.g., Dennis v. Dennis (In re Dennis)*, 25 F.3d 274, 278 (5th Cir. 1994), cert. denied, 513 U.S. 1081 (1995) (holding that collateral estoppel applies "only if, *inter alia*, the [state] court has made specific, subordinate factual findings on the identical dischargeability issue in question—that is, an issue which encompasses the same prima facie elements as the bankruptcy issue—and the facts supporting the court's findings are discernable from that [state] court's record.").[19]

    To put a slightly finer point on it, it is possible that the Plaintiffs prevailed in State Court only on their breach of contract claim.  If so, the Final Judgment is dischargeable here.  *Williams v. Int'l Bhd. of Elec. Workers Local 520 (In re Williams)*, 337 F.3d 504, 509-11 (5th Cir. 2003) (A breach of contract without "explicit evidence that a debtor's breach was intended or substantially certain to cause injury," is dischargeable.);  *Jones v. Reyes (In re Reyes)*, No. 10-5111, 2011 WL 2160359, at*1 (Bankr. W.D. Tex. 2011).  Of course, it is also possible that the Company prevailed in State Court only on the breach of fiduciary duty claim (although that is unlikely given that the damages are awarded to both Hill and the Company in the Final Judgment), in which case the Final Judgment would be nondischargeble here.  *Gupta v. Eastern Idaho Tumor Inst., Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004) (The Fifth Circuit has "not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity,

---

[19] While the *Dennis* court talks of "specific, subordinate factual findings" and the Plaintiffs here have largely avoided that dilemma by the deemed admission of the factual allegations in the Complaint as true due to Fritz's failure to answer the Complaint, the holding in *Dennis* remains relevant to the failure of the State Court to allocate the damages awarded in the Final Judgment among the claims pled in the State Court Petition.

as understood by state law principles, are non-dischargeable. Thus, debts of corporate officers to the corporation or a minority shareholder have been held non-dischargeable, as have the debts of a managing partner of a limited partnership to the limited partners.").

The problem here is that it is impossible to discern from the Final Judgment which state court claims the Plaintiffs prevailed upon and for which damages were awarded.  Absent the damages (or some portion of the damages) arising from the breach of fiduciary duty claim, the Company has failed in its proof here.  So, unless this Court can allocate the damages among the claims pled in the State Court Petition and between Hill and the Company when the Final Judgment fails to do so, the Company's § 524(a)(4) claim will also fail.  Because of this, the Court granted the parties the opportunity to submit post-Trial briefs on this issue.  While briefs were filed, neither brief addressed the question the parties were asked to brief.[20]

Based upon its own research, the Court is satisfied that it cannot allocate the damages awarded in the Final Judgment among the claims pled in the State Court Petition and/or between

---

[20]  The Plaintiffs argue in their post-trial brief that the Court need not allocate the damages here because there is only "one course of conduct" that gives rise to the Final Judgment's damages and, as such, the Court does not need to allocate the Final Judgment's award.  Plaintiffs' Brief in Support of Judgment Granting Objection to Discharge] [AP No. 53] (the **"Plaintiffs' Post-Trial Brief"**) at 2.  While there may be only "one course of conduct, there were multiple pled claims arising from that "course of conduct" and this Court cannot discern what claim or claims the Plaintiffs prevailed upon in the State Court.  The two cases the Plaintiffs relied upon are distinguishable. In *Beard Research, Inc. v. Kates (In re Kates)*, 485 B.R. 86 (Bankr. E.D. Pa.), the court relied upon "two (2) opinions issued by the [Delaware] Chancery Court in support of the judgment it entered," *id*. at 92, when it held the "Debtor engaged in a single course of related conduct that caused the Plaintiffs' injuries . . . mak[ing] it unnecessary to allocate the [damages] among the five (5) state court claims."  *Id*. at 111.  No such opinions from the State Court are available here.  In *KV Pharm. Co. v. Harland (In re Harland)*, 235 B.R. 769 (Bankr. E.D. Pa.), the court considered "the very detailed [Missouri] state court determination," *id*. at 772, and a judgment that "specifically referenced the counts on which the [state] court found for the [p]laintiff," *id*. at 782, to aid its holding that the plaintiff's claims were nondischargeable pursuant to § 523(a)(4).  *Id*. at 782-83.  As noted previously, the State Court did not reference the counts on which it found for the Plaintiffs here.

Fritz's post-trial brief simply points out that the Plaintiffs failed to cite "state law or cases in support of its argument that the entire amount of the judgment can be apportioned to their nondischargeability claims."  [Defendant Chris J. Fritz's Post-Trial Brief in Opposition to Plaintiffs' Complaint for Nondischargeability of Debt] [AP No. 56] (**"Fritz's Post-Trial Brief"**) ¶ 3.

Hill and the Company. *Pollock v. Marx (In re Marx)*, 171 B.R. 218, 223 (Bankr. N.D. Tex. 1994) (*citing Crain v. Limbaugh (In re Limbaugh)*, 155 B.R. 952, 956 (Bankr. N.D. Tex. 1993)); *Dang v. Gilbert (In re Dang)*, 560 B.R. 287, 293 (S.D. Tex. 2016) ("When a state-court judgment does not contain sufficiently detailed findings to meet the federal nondischargeability test, the court should look beyond the judgment and examine the jury instructions and evidence produced in the state-court proceedings that support the judgment.") *(citing Harold V. Simpson and Co. v. Shuler (In re Shuler)*, 722 F.2d 1253, 1257–58 (5th Cir. 1984)). Given that it is *possible* that the Final Judgment was predicated upon a dischargeable breach of contract claim that was pled in the State Court Petition, and that it is also *possible (*although unlikely given that the damages were awarded to both the Company and Hill) that the Final Judgment was predicated upon a nondischargeable breach of fiduciary duty claim that was pled in the State Court Petition, the Company has also failed in its proof here. In short, there is no evidence in the record that Fritz's breaches of fiduciary duty damaged the Company in a specific amount and its § 523(a)(4) claim also fails.

## C. Plaintiffs' § 523(a)(6) Claim.

Section 523(a)(6) precludes the discharge of a debt incurred "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). "The Supreme Court, in *Kawaauhau v. Geiger,* stated that '[t]he word "willful" in [§ 523](a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury.'" *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). "The Fifth Circuit extended *Kawaauhau's* reasoning in *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 603 (5th Cir. 1998), and stated that 'either objective substantial certainty [of injury] or subjective motive [to injure] meets the Supreme Court's definition of "willful ... injury" in

§ 523(a)(6).'" *Id.* "Injuries covered by section 523(a)(6) are not limited to physical damage or destruction; harm to personal or property rights is also covered by section 523(a)(6)." *Int'l Beauty Prod., LLC v. Beveridge (In re Beveridge)*, 416 B.R. 552, 571 (Bankr. N.D. Tex. 2009) (citation omitted). "Willful conversion of another's property [also] falls within section 523(a)(6)." *Id.* Fritz's actions, as described below, were substantially certain to inflict injuries upon Hill and the Company.

While an officer and director of the Company, Fritz formed Garrin as a direct competitor that would and did perform the identical roofing services as the Company. Complaint ¶¶ 5, 7, 9. Fritz and Garrin then took the Structural Steel job from the Company without its knowledge or consent. *Id.* ¶ 7. These actions were substantially certain to cause injury to the Company and Hill, as a 50% owner of the Company, by usurping corporate opportunities and profits from the Company for the benefit of Fritz and Garrin. Additionally, Fritz's rebranding of the Company website was also substantially certain to injure the Company by diverting potential business opportunities away from the Company to Garrin. *Id.* ¶ 8. Fritz's changes to the website (i) eliminated the Company's online presence, and (ii) promoted a direct competitor. *Id.* Each of Fritz's actions was substantially certain to result in harm to the Company and Hill.

The Plaintiffs' evidence clearly establishes Fitz's actions were willful, malicious, and substantially certain to injure the Company and Hill. But, as just discussed, the Plaintiffs' evidence fails to establish the extent of the Plaintiffs' damages from Fritz's "willful and malicious" acts. Simply put, there is no evidence in the record allocating the damages awarded in the Final Judgment to this claim. *In re Marx*, 171 B.R. at 223 (*citing In re Limbaugh*, 155 B.R. at 956); *In re Dang*, 560 B.R. at 293 ("When a state-court judgment does not contain sufficiently detailed findings to meet the federal nondischargeability test, the court should look beyond the judgment

and examine the jury instructions and evidence produced in the state-court proceedings that support the judgment.") *(citing In re Shuler*, 722 F.2d at 1257–58).  As such, the Plaintiffs' § 523(a)(6) claim also fails.

## IV.        CONCLUSION

For the reasons stated, the Plaintiffs have failed to carry their burden to prove that the debt liquidated in the Final Judgment is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A), (a)(4), and/or (a)(6).  Thus, the Final Judgment is dischargeable in the Bankruptcy Case.

A judgment consistent with this Memorandum Opinion will be entered separately.

**### END OF MEMORANDUM OPINION ###**